**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

NOEL LABOY,                                          Case No.

                     Plaintiffs,            **COMPLAINT**

    -against-
                                     **Jury Trial Demanded**

QUALITY AUTOMOTIVE SERVICES, INC.,
ROSEANNE BENJAMIN, ANTHONY ALFARO,
and JOHN DOE 1 a/k/a "HRATCH",

                     Defendants.
-------------------------------------------------------------X

      Plaintiff Noel Laboy ("Laboy" or "Plaintiff") alleges against Defendants Quality

Automotive Services, Inc., ("Quality"), Roseann Benjamin ("Benjamin"), Anthony Alfaro

("Alfaro), and John Doe 1 aka "Hratch" ("Hratch") (collectively, "Defendants") upon

information and belief, as follows:

### NATURE OF THE CLAIMS

1. Quality operates as a for-profit business offering roadside assistance, towing services, and automobile repair.

2. Benjamin, Alfaro, and Hratch are co-owners and operators of Quality.

3. Defendants employed Laboy as a tow truck driver.

4. Laboy was a dedicated and reliable employee of Defendants with no record of disciplinary action.

5. Defendants maintained a pattern and practice of failing to pay Plaintiff the minimum wage for all hours worked, the overtime rate of one-and-one-half (1 ½) times the regularly hourly rate/applicable minimum wage rate for all hours worked in excess of

forty per week, and spread-of-hours pay for each workday his shift or shifts exceeded 10 hours per day.

6. Defendants regularly paid Plaintiff a flat fee per shift scheduled, in cash, regardless of how many hours Plaintiffs worked in each shift and of how many hours Plaintiffs worked per week, including hours over forty.  This payroll scheme is an obvious and willful avoidance of Defendants' obligation to pay minimum wage and overtime, as required under state and federal law.

7. Defendants also failed to furnish to Plaintiff annual wage notices and complete, accurate pay statements.

8. Defendants further failed to maintain an accurate record keeping of hours worked and wages paid to Plaintiff.

9. Defendants have systematically and repeatedly ignored the requirements of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and the New York Labor Law § 190, *et seq*. ("NYLL").  Plaintiff seeks relief for Defendants' unlawful actions, including compensation for unpaid minimum wages, overtime wages, spread-of-hours pay, liquidated damages, statutory civil damages, pre- and post-judgment interest, compensatory damages, and attorney's fees and costs, pursuant to the FLSA and NYLL.

10. Plaintiff also complains of Defendants' unlawful discrimination against Plaintiff on the basis of Plaintiff's disabilities and for retaliating against Plaintiff after he opposed Defendants' discriminatory conduct.

11. More specifically, Plaintiff brings causes of actions pursuant to the New York State Human Rights Law, Executive Law § 296 *et seq*., ("NYSHRL") and the Administrative Code of the City of New York § 8-101 *et seq*., ("NYCHRL") for discrimination on the basis of Plaintiff's

diagnosed hypertension and diabetes and subsequent retaliation in response to Plaintiff's opposition to Defendants' discriminatory practices.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

13. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this district.

14. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

**Plaintiff Laboy**

15. Laboy was and is a resident of Kings County, New York.

16. From approximately June 2004 to April 2, 2020, Laboy was employed by Defendants as a tow truck driver.

17. At all times relevant to this action, Laboy was an employee engaged in commerce or the production of goods for commerce on behalf of Defendants.

18. At all times relevant to this action, Laboy was an employee of Defendants within the meaning of the FLSA and NYLL.

**Defendant Quality**

19. Quality was and is a domestic business corporation organized and existing under the laws of the State of New York.

20. From the commencement of Plaintiff's employment with Quality until in or around November 2018, Quality's principle place of business was located at 370 Devoe Street, Brooklyn, New York 11211.

21. At all times relevant to this action, since in or around November 2018, Quality's principle place of business was and is located at 122-28 Farmers Boulevard, Springfield Gardens, New York 11413.

22. Quality is a business or enterprise engaged in interstate commerce within the meaning of the FLSA.

23. Quality has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

24. Quality has an annual gross volume of sales made or business done in excess of $500,000.

25. At all times relevant to this action, Defendants were employers of Plaintiff within the meaning of the FLSA and NYLL.

**Defendant Benjamin**

26. Upon information and belief, Benjamin is a resident of the State of New York.

27. At all times relevant to this action, Benjamin served as a principal, shareholder, officer, owner, and/or manager of Quality.

28. At all times relevant to this action, Benjamin possesses or possessed operation control and policy making authority, an ownership interest, or significant control of Quality.

29. Benjamin possessed and/or exercised the power and authority to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control

labor relations and personnel policies, maintain employment records, and determine terms and conditions of Plaintiff's employment.

30. Employees of Quality, including Plaintiff, could complain to Benjamin regarding any of the terms of their employment, and Benjamin would have the authority to effect any changes to the quality and terms of their employment.

31. The acts of Quality charged in this Complaint were authorized, directed, or accomplished by Benjamin, individually or through her agents, officers, employees, or representatives, while actively engaged in the management and/or ownership of Quality.

32. Benjamin is personally jointly and severally liable for the violations of the FLSA and NYLL by Quality.

**Defendant Alfaro**

33. Upon information and belief, Alfaro is a resident of the State of New York.

34. At all times relevant to this action, Alfaro served as a principal, shareholder, officer, owner, and/or manager of Quality.

35. At all times relevant to this action, Alfaro possesses or possessed operation control and policy making authority, an ownership interest, or significant control of Quality.

36. Alfaro possessed and/or exercised the power and authority to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, and determine terms and conditions of Plaintiff's employment.

37. Employees of Quality, including Plaintiff, could complain to Alfaro regarding any of the terms of their employment, and Alfaro would have the authority to effect any changes to the quality and terms of their employment.

38. The acts of Quality charged in this Complaint were authorized, directed, or accomplished by Alfaro, individually or through his agents, officers, employees, or representatives, while actively engaged in the management and/or ownership of Quality.

39. Alfaro is personally jointly and severally liable for the violations of the FLSA and NYLL by Quality.

**Defendant Hratch**

40. Upon information and belief, Hratch is a resident of the State of New York.

41. At all times relevant to this action, Hratch served as a principal, shareholder, officer, owner, and/or manager of Quality.

42. At all times relevant to this action, Hratch possesses or possessed operation control and policy making authority, an ownership interest, or significant control of Quality.

43. Hratch possessed and/or exercised the power and authority to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, and determine terms and conditions of Plaintiff's employment.

44. Employees of Quality, including Plaintiff, could complain to Hratch regarding any of the terms of their employment, and Hratch would have the authority to effect any changes to the quality and terms of their employment.

45. The acts of Quality charged in this Complaint were authorized, directed, or accomplished by Hratch, individually or through his agents, officers, employees, or representatives, while actively engaged in the management and/or ownership of Quality.

46. Hratch is personally jointly and severally liable for the violations of the FLSA and NYLL by Quality.

## PLAINTIFF'S FACTUAL ALLEGATIONS

47. In or around June 2004, Laboy commenced employment with Defendants.

48. When Laboy first commenced employment with Defendants, he reported to work out of the Quality garage located at 370 Devoe Street, Brooklyn, New York 11211 (the "Devoe location").

49. In or around November 2018, Quality moved locations and began operating at the premises located at 122-28 Farmers Boulevard, Springfield Gardens, New York 11413 (the "Farmers location").

50. For the duration of his employment with Defendants, Laboy was a tow truck operator.

51. After Defendants moved their operations from the Devoe location to the Farmers location, Laboy reported to the Farmers location for the remainder of his employment with Defendants.

52. In his capacity as a tow truck operator, Laboy's duties and responsibilities included, but were not limited to: responding to dispatches for stranded motorists and disabled vehicles within the State of New York, assisting motorists stranded within the State of New York, and towing disabled vehicles and their occupants from their location within the State of New York to Quality's garage.

**Wage and Hour Violations**

53. For the entirety of his employment with Defendants, Laboy was a non-exempt employee.

54. Laboy satisfactorily performed his duties and responsibilities.

55. Prior to commencing his employment with Defendants, Laboy had over 15 years of experience as a tow truck driver.

7

56. Throughout his career as a tow truck driver, including for the duration of his employment with Defendants, Laboy has maintained a "clean" license.

57. For the duration of his employment with Defendants, Laboy was assigned a 10-hour daily scheduled shift, five days per week—Monday through Friday.

58. On the days he was scheduled to work for Defendants, Laboy's regularly scheduled shift was 6:00 a.m. to 4:00 p.m.

59. However, on a daily basis, Alfaro directed Laboy to answer calls several hours before the start of his scheduled shift and near the end of his scheduled shift.

60. When a Quality tow truck operator "answers a call", they must drive the tow truck to the stranded motorist's location, speak with the motorist, assess whether the vehicle can be made safely operable without a tow, if so, perform roadside repairs necessary to make the vehicle safely operable, and, if not, tow the motorist and the vehicle back their final destination.

61. Depending on several factors, including but not limited to the location of the tow truck when dispatched to answer the call, traffic and weather conditions, the location of the stranded motorist, and the nature and condition of the vehicle, the time from a tow truck operator's response to a dispatch to return to the Quality garage could run from 30 minutes to over three hours.

62. As a result, when Defendants dispatched Laboy to answer a call near the end of his shift, Laboy did not return to the Quality garage until well after the end of his scheduled shift.

63. The pre- and post-scheduled shift work which Defendants required Laboy to perform resulted in Laboy performing approximately an additional three (3) hours of work for Defendants nearly per day beyond his scheduled shift.

64. As a result, Laboy actually performed an approximate average of 13 hours of work per day, five days per week, while employed by Defendants, for a total of approximately 65 hours per week.

65. Every day Laboy performed work for Defendants, his shift was longer than ten (10) hours per day.

66. For the duration of his employment with Defendants, Defendants paid Laboy a flat weekly salary in cash.

67. Every Friday, Alfaro or Hratch handed Laboy an envelope with cash representing Laboy's pay for the previous week's work.

68. From the commencement of his employment until in or around June 2013, Defendants paid Laboy $450 per week in cash, regardless of how many hours he worked.

69. From in or around June 2013 until in or around June 2015, Defendants paid Laboy $550 per week in cash, regardless of how many hours he worked.

70. From in or around June 2015 until in or around June 2017, Defendants paid Laboy $575 per week in cash, regardless of how many hours he worked.

71. From in or around June 2017 until in or around June 2019, Defendants paid Laboy $625 per week in cash, regardless of how many hours he worked.

72. From in or around June 2019 until Laboy's last day of employment with Defendants on or around April 2, 2020, Defendants paid Laboy $750 per week in cash, regardless of how many hours he worked.

73. Throughout Laboy's employment with Defendants, Defendants did not maintain a punch clock or log of hours signed by Laboy to record the hours Laboy worked.

74. Instead, Laboy's hours were recorded by a dispatcher writing down the time Laboy took his radio at the beginning of his shift and dropped off his radio at the end of his shift.

75. Because the dispatchers were routinely distracted by calls and their other duties, their recordation of the times Laboy picked up and dropped off his radio was not contemporaneous and was frequently inaccurate.

76. For the duration of his employment with Defendants, Defendants did not pay Laboy the applicable minimum wage for all hours worked under the FLSA and NYLL.

77. For the duration of his employment with Defendants, Defendants did not pay Laboy the one-and-one-half (1 ½) overtime premium rate for each hour he worked beyond 40 hours in a week.

78. For the duration of his employment with Defendants, Defendants did not pay Laboy an additional hour of pay at the minimum wage for each day his shift work exceeded 10 hours.

79. For the duration of his employment with Defendants, Defendants did not maintain a punch clock, employee-reported or endorsed log of hours, or other accurate record of hours worked by Laboy.

80. For the duration of his employment with Defendants, Defendants failed to keep accurate records of wages earned or hours worked by Laboy.

81. For the duration of Laboy's employment with Defendants, Defendants failed to furnish Laboy with an accurate and complete statement with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

82. For the duration of his employment with Defendants, Defendants did not provide Laboy with a wage notice setting forth his rate of pay, overtime rate, method of compensation, regular payday, names of his employers (including fictitious names), addresses and phone numbers for his employers' main offices or principal locations, or any allowances taken.

83. Defendants' violations of the FLSA and NYLL as set forth herein were willful.

**Disability Discrimination and Retaliation**

84. In addition to the aforementioned wage and hour violations, Defendants discriminated against and retaliated against Laboy due to his disabilities.

85. In or around 2010, while working for Defendants, Laboy was diagnosed with hypertension and diabetes.

86. Laboy's hypertension and diabetes are chronic conditions which require regular monitoring and lifestyle adjustments to reduce the frequency and severity of associated symptoms.

87. At all times relevant to this action, Laboy's hypertension was and is a physiological impairment that affects his circulatory system.

88. Laboy's hypertension manifests with symptoms including, but not limited to headaches, nausea, and a pounding sensation in his neck and ear.

89. At all times relevant to this action, Laboy's diabetes was and is a physiological impairment that affects his endocrine system.

11

90. Laboy's diabetes manifests with symptoms including, but not limited to tremors, extreme thirst, frequent urination, and blurry vision.

91. Shortly after being diagnosed with hypertension and diabetes, Laboy told Alfaro about his diagnoses.

92. Because Laboy had his own designated tow truck—which no one else drove—he did not request or require accommodations from Defendants related to his hypertension and diabetes.

93. Since receiving his diagnoses of hypertension and diabetes, Laboy was able to—and did—perform all of the duties and responsibilities of his job as a tow truck driver for Defendants.

94. Severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) ("COVID-19" or "Coronavirus") is a viral infectious disease that attacks several organ systems and bodily functions.

95. The severity of symptoms individuals infected with Coronavirus may experience varies greatly.  Some individuals are asymptomatic, others experience mild or moderate symptoms, and others suffer from severe symptoms.

96. The symptoms presented in each individual infected with Coronavirus also vary greatly. Infected individuals may present with one or more symptoms including, but not limited to: loss of sense of smell and taste, fever, cough, fatigue, muscle aches, and reduced function of the lungs, heart, and brain.

97. Coronavirus infection can result in severe medical complications including, but not limited to: pneumonia and trouble breathing, organ failure in several organs, heart

damage, acute respiratory distress syndrome, blood clots, and increased susceptibility to other viral and bacterial infections.

98. A severe Coronavirus infection can require hospitalization, life-saving, invasive procedures such as intubation, and can result in death.

99. Certain preexisting conditions, including hypertension and diabetes, substantially increase the likelihood an individual infected with Coronavirus will develop severe symptoms as a result of the Coronavirus infection.

100.    In and before April 2020, no publicly available Coronavirus vaccine existed.

101.    In and before April 2020, no publicly available cure for Coronavirus existed.

102.    By March 2020, Coronavirus was a global pandemic.  In or around the beginning of April 2020, New York City was suffering from exceptionally high Coronavirus infection, hospitalization, and death rates.

103.    From the commencement of his employment with Defendants until on or around March 31, 2020, Laboy drove only his designated tow truck while employed by Defendants.

104.     From the commencement of his employment with Defendants until on or around March 31, 2020, no other tow truck driver drove Laboy's designated truck.

105.    Laboy was scheduled to work for Defendants on April 1, 2020.

106.    On or around March 31, 2020, Alfaro told Laboy not to come to work on April 1, 2020.

107.    When Laboy returned to work on April 2, 2020, he immediately noticed his designated tow truck was a mess, and it was clear someone else had driven his truck between March 31 and April 2, 2020.

13

108.     Immediately after realizing his truck had been driven by another tow truck operator, Laboy became concerned about contracting Coronavirus and complained to Alfaro.

109.     Laboy told Alfaro that because of his hypertension and diabetes, he could not afford to contract Coronavirus and asked Alfaro to have the truck cleaned before he returned to work.

110.     Alfaro refused Laboy's request to clean the truck and instead sent Laboy home.

111.     Laboy told Alfaro he was going to use the week of vacation time he accrued and asked Alfaro to clean the truck while he was on vacation.

112.     When Laboy was ready to return from vacation, Alfaro refused to put him on the schedule and told him to "go on unemployment".

113.     Alfaro effectively terminated Laboy's employment with Defendants.

114.     Defendants never paid Laboy for the week of vacation he earned and took commencing on or around April 2, 2020.

115.     As a result, on or around April 2, 2020, Defendants effectively terminated Laboy's employment.

116.     On or around October 1, 2020, Laboy asked Alfaro if Defendants would rehire him.

117.     Alfaro refused Laboy's request to be rehired by Defendants.

118.     Defendants discriminated against Laboy on the basis of his disabilities.

119.     Due to his hypertension and diabetes, Laboy had a significant risk of severe reaction to a Coronavirus infection.

120.     Immediately after learning another driver used (and left a mess in) his designated truck, Laboy requested Defendants clean the truck to reduce the chance Laboy would contract Coronavirus.

121.     Laboy's request that Defendants clean his designated truck was a request for a reasonable accommodation.

122.     Laboy's request that Defendants clean his designated truck after it was used by another driver to reduce the chance he contracted Coronavirus and suffered a serious—potentially, fatal—reaction was reasonable.

123.     A one-time cleaning of Laboy's designated truck would not have posed an undue hardship for Defendants.

124.     Despite Laboy's request, Defendants refused to clean Laboy's designated truck and instead sent him home.

125.     Defendants discriminated against Laboy by failing to provide him with a reasonable accommodation.

126.     After and because Laboy opposed Defendants' refusal to grant his request for a reasonable accommodation, Defendants further discriminated against and retaliated against Laboy by effectively terminating his employment, failing to pay him for his accrued vacation days, and refusing to rehire him.

127.     Defendants' actions and conduct were intentional and intended to harm Laboy.

128.     Defendants have caused damage and injury to Laboy by first subjecting him to discrimination and then again by further discriminating against and retaliating against him after his complaints of discrimination.

129.     Laboy has been unlawfully discriminated against, was humiliated, and has been degraded and belittled, and as a result, he suffers loss of rights, emotional distress, and a loss of income and earnings.

130.     As a result of Defendants' actions, Laboy felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

131.     As a result of Defendants' discriminatory and intolerable treatment, Laboy suffered severe emotional distress.

132.     As a result of the acts and conduct complained of herein, Laboy has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Laboy has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

133.     As a result of the above, Laboy has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

134.     As Defendants' conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the jurisdictional limits of all lower Courts.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Minimum Wage**

135.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

136.     Defendants were required to pay Plaintiff the applicable federal minimum wage rate.

137.     Defendants failed to pay Plaintiff the minimum wages to which he is entitled under the FLSA.

138.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

139.     Defendants' violations of the FLSA described above have been willful, and therefore, a three year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

140.     As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

<u>SECOND CAUSE OF ACTION</u>
**New York Labor Law – Unpaid Minimum Wage**

141.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

142.     Defendants failed to pay Plaintiff the minimum wages to which he is entitled under the NYLL.

143.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff minimum hourly wages.

144.     As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq*.

<u>THIRD CAUSE OF ACTION</u>
**Fair Labor Standards Act – Unpaid Overtime**

145.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

146.     Defendants are employers within the meaning of 29 U.S.C §§ 203(e) and 206(a) and employed Plaintiff.

147.     Defendants were required to pay Plaintiff one and one-half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours worked in excess of 40 hours in a workweek.

148.     Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the FLSA.

149.     Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff overtime wages.

150.     Defendants' violations of the FLSA described above have been willful, and therefore, a three year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

151.     As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants his unpaid overtime wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**

152.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

153.     Under the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff one and one half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours he worked in excess of forty (40) hours per week.

154.      Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the NYLL.

155.      Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff overtime wages.

156.      As a result of Defendants willful violations of the NYLL, Plaintiff is entitled to recover his unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq*.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Unpaid Spread-of-Hours

157.      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

158.      Defendants have willfully failed to pay Plaintiff additional compensation of one hour's pay at the minimum hourly wage rate in all instances where Plaintiff worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.* and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. Tit. 12 §§, 137-1.7 (2010), 146-1.6 (2012).

159.      As a result of Defendants willful violations of the NYLL, Plaintiff is entitled to recover unpaid spread-of-hours compensation, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to the NYLL.

## SIXTH CAUSE OF ACTION
### New York Labor Law – Wage Theft Prevention Act

160.      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

161.     Defendants violated NYLL § 195(1) by failing to furnish Plaintiff, at the time of

hiring and on or before February 1st of each subsequent year of employment (when

applicable), with a notice containing the rate or rates of pay and basis thereof, whether

paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates

of pay and overtime rate or rates of pay if applicable; the regular pay day designed by the

employer in accordance with NYLL § 191; the name of the employer; any "doing

business as" names used by the employer; the physical address of the employer's main

office of principal place of business, and a mailing address if different; the telephone

number of the employer; and anything otherwise required by law.

162.     Due to Defendants' violations of NYLL§ 195(1), Plaintiff is entitled to statutory

penalties of $50.00 for each workday that Defendants failed to provide a wage notice, up

to a maximum of $5,000 each, reasonable attorneys' fees, costs and injunctive and

declaratory relief, as provided by NYLL § 198(1-b)

163.     Defendants violated NYLL § 195(3) by failing to furnish Plaintiff with a pay

statement containing each payment of wages and accurate statement listing the dates of

work covered by that payment or wages; name of employee; name of employer; address

and phone number of employer; rate of rates of pay and basis thereof, whether paid by

the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or

rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and

the number of overtime hours worked; gross wages, deductions, allowances, if any,

claimed as part of the minimum wage; and net wages.

164.     Through their failure to provide Plaintiff with a wage notice and accurate pay statements as required by the NYLL, Defendants have violated NYLL § 190, *et seq*. and the supporting New York State Department of Labor Regulations.

165.     Due to Defendants' violation of NYLL § 195(3), Plaintiff is entitled to statutory penalties of $250.00 for each workweek that Defendants failed to provide him with accurate pay statements, or a total of $5,000 each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL § 198(1-d).

## SEVENTH CAUSE OF ACTION
### New York Labor Law – Record Keeping Violations

166.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

167.     At all times relevant to this action, Defendants were and are required to establish, maintain and preserve for not less than six years, weekly payroll records that show for each employee, among other information, true and accurate payroll records and the number of hours worked daily and weekly, including the time of arrival and departure of each employee. NYLL § 195(4); 12 N.Y.C.R.R. § 142-2.6.

168.     Defendants violated the applicable NYLL and NYCRR provisions by not maintaining and preserving Plaintiff's time of arrival and departure and amount of compensation provided to Plaintiff for work performed.

## EIGHTH CAUSE OF ACTION
### New York State Human Rights Law – Discrimination

169.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

170.     By the actions described above, among others, Defendants have discriminated against Plaintiff as a result of his disabilities, in violation of the NYSHRL.

171.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

## NINTH CAUSE OF ACTION
### New York City Human Rights Law – Discrimination

172.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

173.     By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of his disabilities, in violation of the NYCHRL.

174.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

## TENTH CAUSE OF ACTION
### New York State Human Rights Law – Retaliation

175.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

176.     By the actions described above, among others, Defendants have retaliated against Plaintiff by, *inter alia*, effectively terminating his employment, failing to pay Plaintiff his accrued vacation days, and refusing to rehire Plaintiff in violation of the NYSHRL for engaging in protected activity.

177.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

## ELEVENTH CAUSE OF ACTION
### New York City Human Rights Law – Retaliation

178.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

179.     Pursuant to the New York City Administrative Code, it is an unlawful discriminatory practice for any person to retaliate or discriminate in any manner against any person because such person has opposed the discriminatory practices.

180.     By the actions described above, among others, Defendants have retaliated against Plaintiff by, *inter alia*, effectively terminating his employment, failing to pay Plaintiff his accrued vacation days, and refusing to rehire Plaintiff in violation of the NYSHRL for engaging in protected activity.

181.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

A.  An order tolling the statute of limitations;

B.  A declaratory judgment that the practices complained of herein are unlawful under applicable federal and state law;

C.  An award of compensatory damages as a result of Defendants' failure to pay wages for all hours worked pursuant to the FLSA, NYLL and supporting regulations;

D.  An award of compensatory damages as a result of Defendants' failure to pay the applicable minimum wage for all hours worked pursuant to the FLSA, NYLL and supporting regulations;

E.  An award of compensatory damages as a result of Defendants' failure to pay overtime compensation for all hours worked in excess of 40 hours per week pursuant to the FLSA, NYLL and supporting regulations;

F.  An award of compensatory damages as a result of Defendants' failure to pay spread-of-hours compensation for all workdays greater in length than 10 hours pursuant to the NYLL and supporting regulations;

G.  An award of damages as a result of Defendants' failure to provide a wage notice upon Plaintiffs' hire or at any time subsequent thereto, pursuant to the NYLL and supporting regulations;

H.  An award of damages as a result of Defendants' failure to provide complete and accurate pay statements upon Plaintiffs at any time, pursuant to the NYLL and supporting regulations;

I.  Enjoining future violations of the FLSA and NYLL by Defendants;

J.  Declaring that Defendants' violations of the FLSA and NYLL were willful;

K.  Awarding Plaintiffs liquidated and/or punitive damages in amount equal to the total amount of wages found to be due, pursuant to the FLSA and NYLL;

L.  Directing Defendants to place Plaintiff in the position he would have occupied but for Defendants' discriminatory, retaliatory, and otherwise unlawful conduct and making Plaintiff whole for all earnings and other benefits he would have received but for Defendants' discriminatory and retaliatory treatment, including, but not limited to, title, seniority status, wages and other lost benefits;

M.  An award of compensatory damages as of result of Defendants' violation of the NYSHRL and the NYCHRL;

N.  An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for his mental anguish, humiliation, embarrassment,

stress and anxiety, emotional and psychological pain and suffering, emotional and psychological distress and the physical manifestations caused;

O. Awarding damages to the Plaintiff, retroactive to the date of his termination, for all lost wages and benefits resulting from the Defendants' unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

P. An award of pre-judgment and post-judgment interest;

Q. An award of punitive damages;

R. An award of costs and expenses of this action together with reasonable attorneys' fees; and

S. Such other relief this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Dated: May 5, 2021
New York, New York

Respectfully submitted,

**Akin Law Group PLLC**

*/s/ Justin Ames*

_____
Justin Ames
45 Broadway, Suite 1420
New York, NY 10006
(212) 825-1400
justin@akinlaws.com

*Counsel for Plaintiff*